**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Russell J. Simon, Jr.,                                         Civil No. 11-0137 (DWF/JJG)

        Petitioner,

v.                                                            REPORT AND RECOMMENDATION

Bruce Reiser, Warden,

        Respondent.

JEANNE J. GRAHAM, United States Magistrate Judge

This matter is before the undersigned United States Magistrate Judge on Russell J. Simon, Jr.'s Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1), Petitioner's Motion to Accept Reply Brief (ECF No. 20), Petitioner's Motion for an Evidentiary Hearing (ECF No. 24), Petitioner's Motion to Respond to Respondents Order From This Court (ECF No. 25), and Petitioner's Motion to Appoint Counsel[1] (ECF No. 26). Petitioner Simon is proceeding on his own behalf. Respondent Bruce Reiser, in his official capacity as Warden of the Minnesota Correctional Facility in Rush City ("MCF-Rush City"),[2] Minnesota, is represented by

---

[1] This is Petitioner's second motion to appoint counsel in this case. Neither the facts nor law have changed since his previous motion and, accordingly, Petitioner's Motion to Appoint Counsel is denied.

[2] When Petitioner filed his petition, he was incarcerated at MCF-Rush City. On October 21, 2011, Petitioner notified the Court that he had been transferred from MCF-Rush City to MCF-Moose Lake. The Court takes judicial notice of the fact that Reiser is now warden of Minnesota Correctional Facility-Fairbault. Neither of these developments affects this Court's jurisdiction over the petition. *See Weeks v. Wyrick*, 638 F.2d 690, 693 (8th Cir. 1981) ("Once the custodian is properly served, subsequent transfer of the petitioner does not cause a loss of habeas corpus jurisdiction . . . .").

Isanti County Attorney Thomas Wedes,[3] and Kimberly Parker and Matthew Frank of the Minnesota Attorney General's Office. The petition was referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.

Petitioner offers three grounds for relief, asserting that he was convicted in violation of various constitutional guarantees. First, Petitioner alleges a urine sample, taken after being ordered at his first appearance, was an unconstitutional search and seizure under the Fourth Amendment. Second, Petitioner argues the court-ordered urine sample was obtained in violation of his Fifth Amendment protection against self-incrimination and his Sixth Amendment right to counsel. Finally, Petitioner claims that the combination of erroneous evidentiary rulings, the admission of improper testimony, and prosecutorial misconduct violated his right to a fair trial, thereby depriving him of due process under the Fourteenth Amendment.

## I.    Background

On May 16, 2008, Isanti County prosecutors filed a complaint against Petitioner alleging two counts of attempted first-degree murder, two counts of attempted second-degree murder, two counts of first-degree criminal sexual conduct, two counts of second-degree assault, and one count of being a felon in possession of a weapon. Following a jury trial, Petitioner was convicted of two counts of attempted second-degree murder, two counts of second-degree assault, and being a felon in possession of a weapon. Petitioner was sentenced to 240 months on the first attempted murder conviction, 213 months for the second attempted murder conviction, and 60 months for the felon in possession conviction, all to be served concurrently. *State v. Simon* (*Simon II*), A09-446, 2010 WL 1967338, at *2 (Minn. Ct. App. May 18, 2010), *review denied*

---

[3] Attorney Wedes was substituted for Amy Reed-Hall on November 28, 2011. (ECF No. 19). Ms. Reed-Hall prosecuted Petitioner and was on the opposing brief in this matter.

(Minn. Aug. 10, 2010). Petitioner's victims were his girlfriend, P.W., and longtime friend, T.P. *Id.* at *1. Petitioner is incarcerated at the Minnesota Correctional Facility in Moose Lake ("MCF-Moose Lake"), Minnesota.

### A.   Events Leading to Petitioner's Arrest

Petitioner and P.W. lived together in P.W.'s home from February 2008 until the time of Petitioner's arrest. *Id.* at *1. Petitioner and T.P. had a twenty-year friendship. *Id.* T.P. assisted Petitioner in remodeling P.W.'s house and sometimes slept there. *Id.* On May 14, 2008, Petitioner went to a local bar and drank until about 1:00 a.m. with T.P. *Id.* T.P. drove them to P.W.'s home because Petitioner was too intoxicated. *Id.* Shortly after arriving at P.W.'s house, T.P. and P.W. were talking in the garage when Petitioner "suddenly 'went nuts' and 'went after T.P.'" *Id.*

After a brief fight with T.P., Petitioner "ordered [P.W.] to go upstairs." *Id.* Petitioner followed P.W. closely and slammed her head into the wall, causing her to fall to the ground. *Id.* Petitioner continued to climb the stairs and fired a gun in P.W.'s direction, followed by two more shots toward T.P. *Id.* T.P. left the house, hid outside, and called the police. *Id.* While T.P. was outside, Petitioner allowed P.W. to care for her frightened child, but said, "You have ten minutes, bitch, to get in here and start s-king my d-k or I'm going to kill you and him." *Id.* (modifications in *Simon II*).

The police entered P.W.'s home at 5:46 a.m. and began their investigation. *Id.* at *2. Officers noticed splintering and a bullet hole in the wood railing on the stairs and went upstairs to find Petitioner. *Id.* Police found Petitioner in bed with P.W., asleep, with a .380 handgun underneath his body. *Id.* Police arrested Petitioner and took P.W. to the hospital where she was

diagnosed with a concussion, knee contusion, and a swollen, tender left arm. *Id.* Police also took T.P. to the hospital where he was treated for a broken nose. *Id.*

In the course of the investigation, police found evidence corroborating P.W.'s version of the events. *Id.* Police also found a small baggie containing a "trace amount of methamphetamine in a trash can." *Id.*

### B. Petitioner's First Appearance

Petitioner appeared in Isanti County, Minnesota, before Judge P. Hunter Anderson. First Appearance Tr. at 1, *State v. Simon* (*Simon I*), (No. 30-CR-08-571) (Minn. Dist. Ct. May 16, 2008). After reading Petitioner's charges, the court deemed Petitioner eligible for a public defender and appointed counsel. *Id.* at *4-5. Not surprisingly, having just been appointed, defense counsel was not present at Petitioner's first appearance. *Id.* According to the first appearance transcript, the prosecution requested unconditional bail in the amount of $2 million, or conditional bail in the amount of $1 million with GPS monitoring and no contact with the victims or their families as conditions of bail. *Id.* at *8-9.

Also at Petitioner's first appearance, the State requested a urinalysis to determine whether drugs were present in Petitioner's blood. *Id.* at *9. The State requested the urinalysis to establish a "baseline as to what drugs are in [Petitioner's] system."[4] *Id.* There was no discussion about whether or how the results of the urinalysis might be admitted against Petitioner as substantive evidence. The court set unconditional bail at $2 million and conditional bail at $1 million. *Id.* at 12.

---

[4] At other points in the record, the State requested a urinalysis for different reasons and with different legal justifications.

Judge Anderson also said "Aside from the conditions of release, I will grant the State's motion for order [sic] for you to provide a sample of your urine for chemical testing in this matter and that you do so forthwith." *Id.* Judge Anderson signed a criminal complaint following a probable cause statement. *Simon II*, 2010 WL 1967338, at *6.

### C.    Petitioner's Trial and Appeal

Petitioner was convicted after a ten-day trial. Petitioner testified at trial that he "came home drunk, vomited in his bedroom, and joined P.W. and T.P. downstairs." *Id.* at *2. Petitioner also testified that he saw P.W. and T.P. kissing, which is what sparked the physical altercation. *Id.*

During the trial, the State introduced evidence of Petitioner's positive urinalysis over defense counsel's objection. Defense counsel objected to admission of the urinalysis because it was ordered at Petitioner's first appearance in violation of his right to counsel. Petitioner also argued that the sample was testimonial and taken in violation of his Fifth Amendment rights. The court sustained Petitioner's objection and gave the State an opportunity to find support for the evidence's admissibility overnight. The following day, the State reargued its position on admission of the urinalysis, and Petitioner's counsel had an opportunity to argue against admission. The trial court reversed its previous evidentiary ruling and admitted the urinalysis.

Petitioner appealed his conviction, arguing that the trial court erred in admitting the results of his urinalysis, the prosecution engaged in misconduct, there was insufficient evidence to support his convictions of second-degree murder, and the court's upward sentencing departure was improper. *Id.* at *1. The Minnesota Court of Appeals affirmed the trial court in all respects. *Id.* at *12.

5

In its decision, the court of appeals found that, because the right to counsel attaches at a first appearance "for all *subsequent proceedings*," ordering the urinalysis at the first appearance did not violate Petitioner's Sixth Amendment right to counsel. *Id.* at *4 (emphasis in original). The court of appeals also found that the prosecution did not request the urinalysis for baseline or bail-related purposes. *Id.* at *4-6. Instead, the court found that the search was supported by probable cause and therefore valid under the Fourth Amendment. *Id.* at *6.

Concerning Petitioner's assertion that he was deprived of a fair trial, the court found that under the Minnesota Supreme Court's standard of review, Petitioner suffered no prejudice. *Id.* at *7. Specifically, the court found that the officers' testimony that they believed the witnesses as they were taking their statements was not vouching testimony. *Id.* The court also concluded that tangential reference to Petitioner's time in prison, use of marijuana, and possession of another apparently illicit drug, "Rush," resulted in no prejudice to Petitioner. *Id.* at *8.[5]

The Minnesota Supreme Court denied review. *State v. Simon*, A09-446, (Minn. Aug. 10, 2010). Simon filed his federal habeas petition on January 14, 2011. Construed liberally, his petition presents claims under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. The factual basis for Petitioner's Fourth, Fifth, and Sixth Amendment claims is that he was unrepresented at his first appearance and there was no warrant authorizing the urinalysis. The factual basis for Petitioner's Fourteenth Amendment claim is that the trial court

---

[5] Petitioner also challenged the sufficiency of evidence and the propriety of the trial court's upward sentencing departure. Because Petitioner does not challenge his conviction on the basis of insufficient evidence nor does he challenge the term of his sentence in this proceeding, those arguments' relevance is limited. The court found sufficient evidence to support the conviction. *Id.* at *8-9. The court also found that the upward departure was appropriate. *Id.* at *11-12.

6

admitted improper evidence in the form of vouching testimony and improper references to past criminal conduct.

## II. Discussion

A prisoner is entitled to a writ of habeas corpus under a limited number of circumstances. A federal court may issue a writ if the adjudication of a petitioner's claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Petitioners, then, have three potential avenues of relief. First, a petitioner may show that the trial court made a decision that is in direct contravention of a federal law. Second, a petitioner may show that the trial court applied a federal law in an unreasonable manner. Finally, a petitioner may show that in light of the evidence, a reasonable fact-finder could not have reached the same conclusion. Notably, the heavy burden of proving an unreasonable determination of the facts falls on the petitioner. *See Garrison v. Burt*, 637 F.3d 849, 853 (8th Cir. 2011). The petitioner must rebut the strong presumption that the lower court's factual determination is correct by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). A petitioner's three avenues of habeas relief all require "the state court decision [to be] both incorrect *and* unreasonable." *See Garrison*, 637 F.3d at 853 (emphasis in original) (citing *Cole v. Roper*, 623 F.3d 1183, 1187 (8th Cir. 2010)).

### A. Motion for Evidentiary Hearing

Before addressing the merits of Petitioner's claims, the Court must address whether it should grant Petitioner's motion for an evidentiary hearing. The Court is bound by 28 U.S.C. §

2254(e)(2). Section 2254(e)(2) bars a court from holding an evidentiary hearing unless a petitioner shows that –

> (A) the claim relies on –
>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). Here, Petitioner has failed to demonstrate either of the first two predicates contained in subsection (A) to holding an evidentiary hearing. Accordingly, the Court is barred from holding an evidentiary hearing and recommends denial of the motion for an evidentiary hearing.

### B.        Fair Presentation of Claims in State Court

It is well-settled that "[b]efore seeking habeas corpus relief under § 2254, a prisoner ordinarily must 'fairly present' his claims to the state courts." *Turnage v. Fabian*, 606 F.3d 933, 936 (8th Cir. 2010); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004). The "fair presentation" requirement includes presenting "his claim to each appropriate state court . . . , thereby alerting that court to the federal nature of the claim." *Baldwin*, 541 U.S. at 29 (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam)). This requirement allows state courts to correct their alleged errors first. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). Petitioners must make explicit the federal nature of their claim. *Baldwin*, 541 U.S. at 32. Indeed, a broad appeal to 'due process' is not sufficient, *Turnage*, 606 F.3d at 936, but explicit reference to the "United States Constitution or federal case law" is required, *Wyldes v. Hundley*, 69 F.3d 247, 251 (8th Cir.

1995). A petitioner must make clear, from the face of the petition or brief, the exact nature and authority upon which the petition for relief relies. *Baldwin*, 541 U.S. at 32. So long as a petitioner refers to "a specific constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue," the petitioner has satisfied the fair presentation requirement. *Martin v. Solem*, 801 F.2d 324, 330-31 (8th Cir. 1986) (citing *Purnell v. Mo. Dep't of Corr.* 753 F.2d 703, 707 (8th Cir. 1985); *Thomas v. Wyrick*, 622 F.2d 411, 413 (8th Cir. 1980)); *see Picard v Connor*, 404 U.S. 270, 277-78 (1971) (holding that the "substance of a federal habeas corpus claim must first be presented" to each level of the state court; requiring substantial equivalence between the state court and habeas court claims); *see also Anderson v. Harless*, 459 U.S. 4, 6 (1982) (reaffirming *Picard* and requiring the state court and federal habeas claims to be more than "somewhat similar").

In this case, Petitioner has presented the federal nature of his claims to the trial court, court of appeals, and Minnesota Supreme Court. While Petitioner offered scant federal case law in those arguments, he has sufficiently articulated the precise rights by citing cases arising out of the Minnesota courts that rely on and analyze the federal rights asserted here. Further, Petitioner offers a cognizable factual basis underlying each right to satisfy this requirement. In his petition, Petitioner specifically lists his constitutional right to counsel, his protection against illegal searches and seizures, the above-mentioned evidentiary rulings, and due process. Further, while his petition does not explicate the basis of his Fifth Amendment claims, his memoranda reference freedom from self-incrimination arguments. The Court is satisfied that, under these circumstances, Petitioner sufficiently alerted the state courts to the alleged constitutional deficiencies.

C.      **Fourth Amendment**

Petitioner claims that the urinalysis constituted an unreasonable search and seizure. Specifically, Petitioner argues that his urine was taken, not pursuant to a search warrant, but pursuant to a criminal complaint. Contained in the criminal complaint was a probable cause statement stating that the court had probable cause to believe that a urinalysis would produce evidence of the crime committed. Petitioner also argues that the urine sample was taken pursuant to his conditions of release and therefore was not admissible, and that the record does not support any other basis for taking a urine sample, including probable cause. In addressing the propriety of taking the urine sample, the state court of appeals found that the prosecution requested a court order requiring the production of the sample and that the judge signed the complaint after a probable cause statement and, thus, the search was constitutional under the Fourth Amendment.

A habeas petition does not state a Fourth Amendment claim where a state has provided a full and fair opportunity for the habeas petitioner to litigate it. *Stone v. Powell*, 428 U.S. 465, 494-95 n.37 (1976). Indeed, because the core of a Fourth Amendment claim is separate from any claim of innocence, courts do not apply the exclusionary rule in a collateral proceeding. *Id.* at 491-92 n.31. The Supreme Court has reasoned that a writ of habeas corpus is proper where there are questions as to the prisoner's actual guilt or innocence. *Id.* Because of the high cost of applying the exclusionary rule, courts will entertain a Fourth Amendment claim only if the state court did not allow a full and fair opportunity to litigate the claim.

To determine whether a petitioner has had a full and fair opportunity to litigate a Fourth Amendment claim, the Eighth Circuit posits two questions. *See Willett v. Lockhart*, 37 F.3d 1265, 1271-72 (8th Cir. 1994) (quoting *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992)). The two-part inquiry requires courts to review a Fourth Amendment claim on habeas review "(a) if

the state has provided *no corrective procedures at all* to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an *unconscionable breakdown in the underlying process.*" *Id.* at 1271 (emphasis in original).

The first question is simple and straightforward. A state has a process for review of Fourth Amendment claims, or it does not. *Id.* at 1272. Minnesota, like all states, allows criminal defendants to challenge the propriety of a search or seizure and to appeal an adverse ruling on that challenge. Minnesota's Rule 11 hearing allows a defendant to challenge, among other things, the admissibility of evidence. Minn. R. Crim. P. 11.02(b). Accordingly, Minnesota provides a corrective mechanism through which criminal defendants may raise Fourth Amendment claims.

The second question is equally narrow and as easily answered. Simply, if the habeas petitioner was allowed access to that review process, he is barred from raising an argument based on a purportedly illegal search in a collateral proceeding. Here, Petitioner's counsel argued against the admission of the urinalysis at the trial court level. Notably, Petitioner's counsel argued against the admission at trial – not at a pretrial omnibus hearing under Minnesota Rule of Criminal Procedure 11, but after the prosecution sought to admit the urinalysis into evidence. The prosecution did not indicate its intent to use the results of the urinalysis against Petitioner so he did not seek suppression of the results at the Rule 11 hearing. Instead, Petitioner challenged the admission of the urinalysis at trial when it was offered. Regardless of when Petitioner challenged the admission of the test results, he was afforded an opportunity to litigate the merits of the Fourth Amendment issue. Any further evaluation of the factual findings or the application of the Fourth Amendment's bar against unreasonable searches and seizures to those factual findings would render *Stone* meaningless. *Id.*

While the state court of appeals engaged in a meaningful discussion about the Fourth Amendment, the Minnesota Supreme Court declined further review and summarily affirmed the court of appeals' decision. This summary affirmance by a state Supreme Court does not compel the conclusion that there was an unconscionable breakdown in the state's review mechanism. *Id.* at 1272.

Because Petitioner was afforded a full and fair opportunity to seek suppression of the urinalysis, and had the opportunity to argue that the trial court's decision was incorrect on appeal, there was no unconscionable breakdown in the process, and Petitioner cannot overcome *Stone*'s bar on reviewing his Fourth Amendment claim. For these reasons, Petitioner's Fourth Amendment claim is barred.

### D.    Fifth Amendment

While Petitioner does not specifically cite the Fifth Amendment as a ground for relief in his petition, it is clear from the petition and his supporting papers that he is offering arguments based on his privilege against self-incrimination. Because habeas petitioners are entitled to a liberal construction of their petitions, *Prince v. Lockhart*, 971 F.2d 118, 121 (8th Cir. 1992), the Court will consider whether admission of Petitioner's urinalysis violated his Fifth Amendment right to be free from compelled self-incrimination.

This case is squarely controlled by *Schmerber v. California*, 384 U.S. 757, 761 (1966). In *Schmerber*, the Supreme Court held that the privilege against self-incrimination "protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature, and that the withdrawal of blood and use of the analysis in question" did not constitute impermissible compulsion in violation of the privilege. *Id.* (footnote omitted). While *Schmerber* dealt with the forced extraction and analysis

of a detainee's blood, the Eighth Circuit has applied its reasoning to urinalyses. *See Hall v. Iowa*, 705 F.2d 283, 289 n.4 (8th Cir. 1983); *Hendricks v. Swenson*, 456 F.2d 503, 506-07 (8th Cir. 1972). Neither *Hall* nor *Hendricks* thoroughly analyzed *Schmerber*'s application to compelled urinalyses, but instead summarily applied *Schmerber* in that setting. Other circuits, however, have closely examined the issue and concluded that conducting a urinalysis without a detainee's consent does not run afoul of the Fifth Amendment's protection against compelled self-incrimination. *See, e.g.*, *United States v. Edmo*, 140 F.3d 1289, 1292-93 (9th Cir. 1998) (finding that a compelled urine sample did not deprive a detainee of his Fifth Amendment privilege against self-incrimination); *Porm v. Peters*, 132 F.3d 36, at *2 (7th Cir. 1997) (unpublished table decision) (same); *Lucero v. Gunter*, 17 F.3d 1347, 1350 (10th Cir. 1994) (same). Because the extraction of urine is not testimonial in nature, Petitioner's Fifth Amendment claim fails.

### E.     Sixth Amendment

Petitioner claims that because he did not have the benefit of counsel at his first appearance, during which the court ordered his urinalysis, his Sixth Amendment right to counsel was violated. In general, an accused has the right to be represented by counsel at all critical stages of the proceedings after the right has attached. *Kirby v. Illinois*, 406 U.S. 682, 688-89 (1972). The right attaches once judicial adversarial proceedings have commenced. *Id.* Judicial criminal proceedings triggering the right to counsel include formal charge, preliminary hearing, indictment, information, and arraignment. *Texas v. Cobb*, 532 U.S. 162, 166 (2001); *see also Rothgery v. Gillespie County, Tex.*, 554 U.S. 191, 199 (2008) (acknowledging that the right to counsel attaches at the first appearance before a judicial officer). Critical stages include "the pretrial type of arraignment where certain rights may be sacrificed or lost." *Coleman v. Alabama*, 399 U.S. 1, 7 (1970). Whether an encounter in the judicial process is a "critical stage" requires

the Court to determine "whether potential prejudice to defendant's rights inheres in the confrontation and the ability of counsel to help avoid that prejudice." *Id.* at 9 (quoting *United States v. Wade*, 388 U.S. 218, 227 (1967)).

The purpose of a hearing under Minnesota's Rule 5 hearing is to advise a criminal defendant of his rights, set bail and conditions of release, and determine whether the appointment of counsel is appropriate. Minn. R. Crim. P. 5.01. This Court is bound by Minnesota's construction of its own procedural rules. *See Coleman*, 399 U.S. at 8-9. It is clear from its face that Minnesota's Rule 5.01 requires the presiding judge to advise a criminal defendant of certain rights. Minn. R. Crim. P. 5.01 ("The purpose of the first appearance is for the court to inform the defendant of the: (1) charge(s); (2) defendant's rights, including the right to have counsel appointed if eligible; and (3) opportunity to enter a plea . . . ."); *see also Simon II*, 2010 WL 1967338, at *4. The Supreme Court has indicated that Minnesota's practice of appointing counsel in accordance with Rule 5.01 and 5.02 coincides with the great majority of other states and the federal government's practice of appointing counsel "tak[ing] the first step toward appointing counsel 'before, at, or just after initial appearance.'" *Rothgery*, 554 U.S. at 203-204, n.14 (citing amicus curiae's list of jurisdictions in which counsel is appointed before, at, or just after an initial appearance).

Indeed, Petitioner's right to counsel attached at the hearing and applied to subsequent critical stages. Because Petitioner's right to counsel attached, the trial court, in accordance with Minnesota law and the United States Constitution, appointed counsel. That the trial court ordered a urinalysis based on probable cause does not affect Petitioner's right to counsel. Simply by virtue of ordering some subsequent testing, a court does not run afoul of the Sixth Amendment, especially if the subsequent testing is as innocuous as a urinalysis. *See, e.g. United States ex rel.*

*Wax v. Pate*, 298 F. Supp. 164, 167-68 (N.D. Ill. 1967) (denying habeas relief where the trial court ordered a psychiatric evaluation before defendant's counsel had appeared on petitioner's behalf).

The Eighth Circuit Court of Appeals has addressed this issue directly in *United States v. Lewis*, 483 F.3d 871 (8th Cir. 2007). This case is nearly indistinguishable from *Lewis*, in that a defendant appealed his conviction asserting a violation of his Sixth Amendment right to counsel. *Id.* at 873-74. In *Lewis*, the defendant was arrested and charged with first-degree robbery. *Id.* at 872-73. In his state prosecution, the trial court ordered DNA analysis before the defendant had an opportunity to consult counsel. *Id.* at 873. The defendant was later tried in federal court for robberies of different banks and the federal prosecutors used the DNA sample as evidence. *Id.* The question before the court was whether collecting a buccal swab before the defendant "was afforded a reasonable opportunity to consult counsel" was violative of the Sixth Amendment. *Id.* at 873. Answering in the negative, the Eighth Circuit held that scientific analyses "'are not critical stages since there is minimal risk that [] counsel's absence at such stages might derogate from his right to a fair trial.'" *Id.* at 874 (citing *Wade*, 388 U.S. at 227-28)). Accordingly, the *Lewis* court found that depriving a defendant of the opportunity to confer with counsel after being charged with a crime, but prior to the collection of a DNA sample, did not violate his Sixth Amendment right to counsel. *Id.* at 873-74; *see also Freeman v. Jackson*, 107 F.3d 875 (8th Cir. 1997) (unpublished table decision) (holding that defendants have no right to consult with counsel prior to giving blood and saliva samples) (citations omitted). Thus, Petitioner did not have a right to counsel in connection with his urinalysis because the ordering and administering of the urinalysis was not a critical stage of his prosecution and, therefore, there is no Sixth Amendment violation.

15

Moreover, any complaint about the sufficiency of probable cause or propriety of the urinalysis is more suitably addressed in the Fourth Amendment context, and its admissibility is better addressed in the Fifth Amendment context. As discussed above, the trial court properly found probable cause and any Fourth Amendment argument is *Stone*-barred and the urinalysis did not violate the Fifth Amendment under *Schmerber*.

Finally, even if the court did err at Petitioner's first appearance, such a minor error would not support the issuance of a writ of habeas corpus. Not all errors mechanically require a grant of habeas corpus. *See, e.g.*, *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (discussing the proper harmless-error standard applicable to habeas review) (citing *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

On habeas review, courts consider whether an error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637-38 (citing *Kotteakos*, 328 U.S. at 776).[6] There are some errors, however, that are not subject to harmless-error review, including admitting a coerced confession, depriving a defendant of counsel throughout the criminal proceedings, or failing to provide an impartial judge. *Chapman v. California*, 386 U.S. 18, 24 n.8 (1967) (citations omitted); *see also Brecht*, 507 U.S. at 629-30 (acknowledging certain errors "require[] automatic reversal of the conviction because they infect the *entire trial process*" (emphasis added)).

The Court finds that the events at Petitioner's first appearance did not have a substantial or injurious effect on the jury's verdict. The results of the allegedly improper urinalysis were

---

[6] The Court held that the *Kotteakos* standard was applicable to constitutional errors of the trial type. The Eighth Circuit has supplemented that finding by clarifying that the "substantial and injurious effect" standard is applicable unless there was a structural defect "that defies harmless-error analysis." *Toua Hong Chang v. Minnesota*, 521 F.3d 828, 832 n.2 (8th Cir. 2008).

admitted at trial over counsel's objection. The trial court required the prosecution to prove the urinalysis' relevance and lay a proper foundation. *Simon II*, 2010 WL 1967338, at *3. The trial court entertained defense counsel's objection and preliminarily excluded the evidence. At that point, any minimally injurious effect was cured by allowing counsel to offer arguments against the admissibility of the urinalysis. The Court finds that counsel had ample opportunity to address any and all plausible arguments at trial, including the arguments that would have been available at the initial appearance. Therefore, Petitioner suffered no injurious effect resulting from the lack of counsel at the first appearance.

### F.      Fourteenth Amendment

Petitioner's final basis for relief is that his conviction was obtained by the admission of improper evidence resulting from prosecutorial misconduct in violation of the Due Process Clause's fair-trial requirement. Specifically, Petitioner argues that the court admitted improper vouching testimony and allowed improper references to his previous time in jail and drug use. Petitioner submits that those evidentiary rulings amounted to a deprivation of due process and that the prosecution's elicitation of that testimony constituted prosecutorial misconduct.

### 1.      Evidentiary Rulings

Petitioner claims that the admission of certain testimony deprived him of due process and his right to a fair trial. Generally, the admission of evidence at trial is insufficient to form the basis for habeas relief unless the admission "infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process." *Clark v. Groose*, 16 F.3d 960, 963 (8th Cir. 1994) (citation omitted). For example, an evidentiary ruling must infringe on the Fifth or Sixth Amendment to the Constitution; broad references to due process are generally insufficient. *See Turnage v. Fabian*, 606 F.3d 933, 936 (8th Cir. 2010). The Supreme Court has

recognized that "[i]n the event that evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." *Payne v. Tennessee*, 501 U.S. 808, 826 (1991) (citing *Darden v. Wainwright*, 477 U.S. 168, 179-83 (1986)).

Petitioner claims that testimony from the officers concerning their investigation constituted improper vouching testimony and thereby deprived him of a fair trial. The Minnesota Court of Appeals' opinion clearly sets forth a detailed summary of the challenged testimony:

> At trial, Deputy Olson testified that when Agent Florell asked him whether, upon arrival at P.W.'s home, he believed what he had been told about the situation was truthful, Olson answered, "we believed what [T.P.] was telling us was the truth." Olson also testified that the police kept asking T.P. questions to determine if his story was consistent, and "from what I gathered he kept, for the most part, you know, everything was pretty much the same." Deputy John McCarty, who arrived at the scene sometime later, testified that "law enforcement [believed T.P.] to be the victim." Investigator Chris Janssen, the officer who interviewed the state's two main witnesses, testified that although the statements of T.P. and P.W. were inconsistent, he was not concerned "[b]ecause certain facts stayed consistent."

*Simon II*, 2010 WL 1967338, at *7. That is not vouching testimony. The testimony did not unfairly bolster the credibility of witnesses concerning their in-court testimony. This testimony did not address any witness's in-court testimony, but rather it was a recounting of the investigation through the eyes of the investigator. The officers did not encroach on the jury's credibility determinations by testifying that the government's witnesses were testifying truthfully. *See, e.g.*, *United States v. Vesey*, 399 F.3d 913, 916-17 (8th Cir. 2003) (acknowledging that the court may not "invade the province of the jury" whose job it is to determine credibility) (citation omitted).

Instead, as the court of appeals found, the testimony was a recitation of the investigation and thought processes as they unfolded that night. *Id.* Even if the testimony suggested to the jury members that they should believe the witnesses' in-court testimony, its impropriety was not so infectious as to render the trial unfair.

Further, Petitioner claims that testimony characterizing him as a "dry snitcher" improperly informed the jury that Petitioner had previously been incarcerated. Petitioner argues his victim, P.W., "testified in a backhanded way about a phrase Petitioner had learned while in prison twenty-four years earlier." This reference to a slang term, apparently common in prison, was not improper and, even if it was, did not render the trial unfair.

Finally, Petitioner asserts that reference to his marijuana use and possession of "Rush" was improper and denied him due process. Again, the Court disagrees. While reference to those drugs was deemed improper, in both situations defense counsel objected and the court sustained the objections. *Id.* at *8. In addition, the court gave a curative instruction and admonished the jury not to consider the references. *Id.* While it is necessary to put the allegedly improper remarks in context, the Supreme Court has found that when a question is followed by an immediate objection and curative instruction, it is unlikely that the sequence of events resulted in a violation of due process. *E.g.*, *Greer v. Miller*, 483 U.S. 756, 766-67 (1987); *Alexander v. Armontrout*, 985 F.2d 976, 978 (8th Cir. 1993). In the absence of evidence to the contrary, a court "should assume that a jury will follow a curative instruction." *United States v. Johnston*, 353 F.3d 617, 623 (8th Cir. 2003). A court must find an "overwhelming probability" that a jury was unable to follow the instruction. *United States v. Uphoff*, 232 F.3d 624, 626 (8th Cir. 2000) (citing *Greer*, 483 U.S. at 766 n.6). In this case, there is no evidence before the Court to indicate the jury's inability to comply with the trial court's instruction. The Court finds, therefore, that the

jury followed the curative instruction and the elicitation of this evidence did not deprive Petitioner of a fair trial.

The Court looks at the cumulative effect of the challenged testimony on the entire trial. *United States v. Mullins*, 446 F.3d 750, 757 (8th Cir. 2006) (citing *United States v. Holmes*, 413 F.3d 770, 774-75 (8th Cir. 2005)). Viewed in the context of the lengthy trial, the allegedly improper testimony cannot support habeas relief. In light of the fact that the testimony about which Petitioner complains was either proper or very minimally improper, combined with the narrow scope of review, the Court concludes that the testimony did not deprive Petitioner of his right to a fair trial or otherwise deprive him of due process under the Fourteenth Amendment.

### 2.    Prosecutorial Misconduct

In *Donnelly v. DeChristoforo*, the Supreme Court considered whether remarks by a prosecutor constituted misconduct so as to deprive a defendant of due process and whether the resulting curative instruction was insufficient to cleanse the taint. 416 U.S. 637, 642-43 (1974). The Court remarked that it "was not a case in which the State has denied a defendant the benefit of a specific provision of the Bill of Rights . . . ." *Id.* at 643. The Court went on to acknowledge that when the Bill of Rights is involved, the Court "take[s] special care to assure that prosecutorial conduct in no way impermissibly infringes them." *Id.* In *Donnelly*, the inquiry was whether the remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* That scope of review is narrow. *Darden*, 477 U.S. at 181. The Court therefore examined the allegedly improper comments in light of the entirety of the trial. *Donnelly*, 416 U.S. at 643.

As in *Donnelly*, this Court must determine whether the prosecutor's conduct was improper and so infected the trial as to render the conviction a denial of due process. Petitioner's

20

claim of prosecutorial misconduct hinges on the fact that the prosecutor elicited each of the above-discussed portions of testimony. Because, as the Court noted above, the testimony was either proper or only minimally improper, there cannot be prosecutorial misconduct reaching the level necessary to support habeas relief. *See Mullins*, 446 F.3d at 757 (citation omitted) (requiring prosecutor's conduct to be improper and to prejudicially affect defendant's substantial rights to deprive him of a fair trial). Just as in determining whether the admission of the evidence, standing alone, deprived Petitioner of due process, the ultimate question is whether the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 643). The Court finds that the prosecutor's conduct did not reach the level of prosecutorial misconduct. Accordingly, all of Petitioner's claims arising under the Fourteenth Amendment fail.

## III.     Conclusion

All claims in the Petition for Writ of Habeas Corpus fail on their merits. The Court concludes that, while Petitioner's right to counsel attached at his first appearance, he was properly appointed counsel. The scientific analysis, however, was not a critical stage of the prosecution. Petitioner's claims of denial of due process and denial of a fair trial fail due to the minimally improper nature of the challenged testimony. Finally, none of Petitioner's Fourth Amendment claims are cognizable on habeas review.

Therefore, based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

(1) Petitioner's Motion to Accept Reply Brief (ECF No. 20) be **GRANTED**;

(2) Petitioner's Motion for an Evidentiary Hearing (ECF No. 24) be **DENIED**;

(3) Petitioner's Motion to Respond to Respondent's Order From this Court (ECF No. 25)

be **DENIED**;

(4) Petitioner's Motion to Appoint Counsel (ECF No. 26) be **DENIED**;

(5) the Petition for Writ of Habeas Corpus (ECF No. 1) be **DENIED**; and

(6) **JUDGMENT BE ENTERED ACCORDINGLY**.


Dated: April 10, 2012                              _s/ *Jeanne J. Graham*_____
                                                   JEANNE J. GRAHAM
                                                   United States Magistrate Judge



**NOTICE**

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **April 25, 2012**.     A party may respond to the objections within fourteen days after service thereof.  Any objections or responses shall not exceed 3,500 words.  The district judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made.